NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

FERNANDO M.,
*Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.M.,
*Appellees.*

No. 1 CA-JV 18-0458
FILED 5-16-2019

Appeal from the Superior Court in Maricopa County
No. JD530271
The Honorable David King Udall, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Laurie Blevins
*Counsel for Appellee DCS*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

**J O H N S E N**, Judge:

¶1        Fernando M. ("Father") appeals the superior court's order appointing a permanent guardian for his daughter ("Child"), born in 2005. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Father and Child's mother separated after Child turned two, and Child lived with her mother until her mother died six years later. Child then moved in with Father, who began taking Child to therapy in July 2013 after he noticed she had behavioral issues.

¶3        In September 2016, the Department of Child Safety ("DCS") received a report that Child's maternal grandmother ("Grandmother") had taken Child to a hospital. A DCS investigator reported that Child said Father had "grabbed [her] and thrown her against a wall" because he believed she had moved or taken his bag of marijuana. The investigator noted that, aside from a red mark on her arm, Child had "no other observable injuries." The investigator also recounted, however, that Child said Father "hits her frequently" and that "she was afraid to go home and that she is not safe" with him. A hospital social worker reported Child became hysterical and hyperventilated when talking about returning to Father, and a physician told the investigator that Child said she was afraid to go home. When DCS interviewed Father, he denied physically abusing Child but admitted he had "swatted [Child] once and had grounded her because she was acting out." Father also denied any substance abuse and stated Child had lied during therapy when she said he had physically abused her on another occasion, but he admitted he yelled at Child from time to time.

¶4        DCS took custody of Child and placed her with Grandmother. The court found Child dependent as to Father and set the case plan as family reunification. Meanwhile, Child continued to live with Grandmother, and DCS began offering services to Father to facilitate

reunification. Father never raised any concern about Child's placement with Grandmother; nor did he ever ask DCS to place Child with someone else.

¶5        In May 2018, the superior court changed the case plan to guardianship, and DCS moved to have Grandmother appointed as Child's permanent guardian. The court held a hearing in October 2018, at which Father, the DCS case manager, and the family therapist testified.

¶6        The court heard evidence that DCS offered Father drug testing and all his test results were negative. DCS also provided Father and Child with individual therapy, with Father's therapy emphasizing "domestic violence and anger management," although Father had not completed therapy by the time of the guardianship hearing. Father also participated in family therapy focused on alleviating Child's concerns about being with Father. The case manager testified DCS considered the family therapy complete, despite Child's continued fear of Father, because Child did not want to continue therapy. DCS also provided therapeutic visitations, which Father successfully completed, followed by supervised visitation.

¶7        Father testified his visits with Child were "going great" and family counseling had helped repair his relationship with Child. He also testified, however, that he felt the counseling was "incomplete" and that he had asked for additional counseling. The therapist testified she believed more family therapy would be beneficial. She testified that although Father had achieved "major progress" and had done "amazing" during certain therapy sessions, additional counseling would improve his anger management. The therapist also testified that Child twice said she lied about Father hitting her. She also testified that Child acknowledged to her that Grandmother effectively had coached Child about what to say on two occasions. On cross-examination, however, the therapist testified Child told her she was nervous about being alone with Father because he might yell at her, slap her or pull her arm, and that Child told her two or three times that she did not want to live with Father. The therapist further testified that Child said Father "blows up when I do something wrong" and Child described this as Father "yelling, screaming, and destroying her property." The therapist also testified Child had not recanted her statements that she was nervous about being around Father and did not want to live with him.

¶8        The superior court granted DCS's motion and appointed Grandmother as Child's permanent guardian. The court acknowledged the

therapist testified Child had recanted her allegations that Father had struck her and the therapist had concerns about Grandmother coaching Child. Nevertheless, the court stated that Father "admitted that he has an anger management problem" and found Father "has an explosive temper that can be set off even after having completed counseling." Noting evidence that Child had been diagnosed with post-traumatic stress disorder, the court further found Child was still afraid of Father, wanted to remain with Grandmother and did not want to return to Father. The court also found DCS had proven the required elements of a permanent guardianship and "has made reasonable efforts to provide reunification services to both Father and Child," and that further efforts at reunification would be unproductive.

¶9　　　　Father timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 8-235(A) (2019), 12-120.21(A)(1) (2019), -2101(A)(1) (2019) and Arizona Rule of Procedure for the Juvenile Court 103(A).[1]

## DISCUSSION

¶10　　　　The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶¶ 11-12 (2000). Under A.R.S. § 8-871(A) (2019), DCS must prove by clear and convincing evidence that a guardianship is in the child's best interests and, as relevant here, the following four elements:

> 1. The child has been adjudicated a dependent child.
>
> 2. The child has been in the custody of the prospective permanent guardian for at least nine months.
>
> 3. [DCS] has made reasonable efforts to reunite the parent and child and further efforts would be unproductive.
>
> 4. The likelihood that the child would be adopted is remote or termination of parental rights would not be in the child's best interests.

---

[1]　　　　Absent material revision after the relevant date, we cite the current version of a statute or rule.

*See also* A.R.S. § 8-872(G) (2019) (burden of proof).  Only the third statutory element is at issue here.

**¶11**        The superior court is the trier of fact in a guardianship adjudication hearing.  *See* Ariz. R.P. Juv. Ct. 63(F).  We view the evidence and reasonable inferences drawn from the evidence in the light most favorable to sustaining the court's decision and will reverse only if no reasonable evidence supports the court's findings.  *See Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009).

**¶12**        Father argues Child's fear of him was the result of Grandmother's manipulation and contends DCS is responsible because it allowed Child to live with Grandmother.  Although Father asserts he suspected as early as September 2016 that Grandmother was manipulating Child, at no time during the dependency did he raise any concern with the superior court about the placement or otherwise challenge the court's repeated findings over time that DCS was making reasonable reunification efforts.  For this reason, Father has waived any challenge to the decision by DCS to place Child with Grandmother during the dependency.  *See Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 179, ¶¶ 17-18 (App. 2014).

**¶13**        DCS offered Father drug testing, individual counseling with a focus on domestic violence and anger management, family therapy, and therapeutic and supervised visits with Child.  DCS also provided Child with a psychological evaluation and individual therapy, and Child participated in family therapy and visitation with Father.  Reasonable evidence supports the superior court's determination that DCS had made reasonable efforts to reunite Father and Child.

**¶14**        In challenging the superior court's finding that any additional efforts by DCS would be unproductive, Father points to his therapist's testimony that he had made progress in understanding Child and that more counseling would be helpful.  Father's argument, however, is merely a request to reweigh the evidence, which we will not do.  *See Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, __, ¶¶ 18-19 (2018).  Even after Father had been receiving services for more than 18 months, Child continued to fear being alone with him, and just three months before the hearing, police were called when Father allegedly pulled a gun on a neighbor.  Simply put, Father continued to have issues with anger management, and those issues continued to cause Child to fear him.  Under these circumstances, the case manager testified DCS decided not to continue family counseling because Child said she did not want to continue to participate.

¶15 As the court found, after more than two years in a temporary placement, "Child is in need of a permanent solution." In a permanent guardianship proceeding, the primary focus is on "the physical, mental and emotional needs and safety of the child." A.R.S. § 8-871(C). Under that standard, reasonable evidence supports the superior court's finding that further services would be unproductive because Child's relationship with Father was not progressing.

## CONCLUSION

¶16 For the reasons stated above, we affirm the superior court's order appointing Grandmother as Child's permanent guardian.

